1  JEFFERY J. DAAR (SBN 105536)
   jdaar@daarnewman.com
2  DAAR & NEWMAN
   A Professional Law Corporation
3  21700 Oxnard Street, Suite 350
   Woodland Hills, CA 91367
4  (818) 615-0999

5  Attorneys for Plaintiff
   CW BAICE LIMITED

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 CW BAICE LIMITED, a company        CASE NO.  5:20-CV-3526
   incorporated and existing under the
12 laws of the British Virgin Islands,
                                      VERIFIED COMPLAINT FOR
13             Plaintiff,             INJUNCTIVE RELIEF PENDING
                                      ARBITRATION
14       vs.

15 THE WISDOMOBILE GROUP
   LIMITED (formerly known as The
16 Ocean Swell Group Limited), a
   company incorporated and existing
17 under the laws of Cayman Islands; THE
   WISDOMOBILE LIMITED (formerly
18 known as The Ocean Swell Limited), a
   company incorporated and existing
19 under the laws of the British Virgin
   Islands; and WISDOMOBILE HK
20 LIMITED (formerly known as Hong
   Kong Baice Limited), a company
21 incorporated and existing under the
   laws of Hong Kong,
22
               Defendants.
23

24

25       Plaintiff CW Baice Limited complains as follows:

26 / / /

27 / / /

28 / / /

-1-

VERIFIED COMPLAINT

## THE PARTIES

1.    Plaintiff CW Baice Limited ("CW Baice") is a company incorporated and existing under the laws of the British Virgin Islands, whose registered address is at Trinity Chambers, P.O. Box 4301, Road Town, Tortola, British Virgin Islands.

2.    Defendant The Wisdomobile Group Limited (formerly known as The Ocean Swell Group Limited) ("Wisdomobile Group") is a company incorporated and existing under the laws of Cayman Islands, whose registered address is at P.O. Box 31119 Grand Pavilion Hibiscus Way, 802 West Bay Road Grand Cayman KYI – 1205 Cayman Islands.

3.    Defendant The Wisdomobile Limited (formerly known as The Ocean Swell Limited) ("Wisdomobile Limited") is a company incorporated and existing under the laws of the British Virgin Islands, whose registered address is at Trinity Chambers, P.O. Box 4301, Road Town, Tortola, British Virgin Islands.

4.    Defendant Wisdomobile HK Limited (formerly known as Hong Kong Baice Limited) ("Wisdomobile HK") is a company incorporated and existing under the laws of Hong Kong, whose registered address is Unit 417, 4th Floor, Lippo Centre Tower Two No.89 Queensway, Admiralty Hong Kong.

5.    Defendant Wisdomobile Limited is wholly owned by defendant Wisdomobile Group.

6.    Defendant Wisdomobile HK is wholly owned by defendant Wisdomobile Limited.

## JURISDICTION AND VENUE

7.    Plaintiff seeks a temporary restraining order and preliminary injunction freezing assets located in the United States, and in particular bank accounts in the name of defendants pending an international arbitration.  The two known bank accounts are located in Santa Clara, California.  This Court has subject matter jurisdiction to enter the

-2-

VERIFIED COMPLAINT

requested relief pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").  See 9 U.S.C. §§ 203, 206.  The Convention states that, "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id.* at § 203.  A request for injunctive relief in aid of an arbitral agreement that would otherwise fall under the Convention is "an action or proceeding falling under the Convention," and this Court thus has subject-matter jurisdiction.  See *Borden, Inc. v. Meiji Milk Products Co., Ltd.*, 919 F.2d 822, 826 (2d Cir. 1990) (holding that "entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to § 206"); *Venconsul N.V. v. TIM Int'l N.V.*, 2003 U.S. Dist. LEXIS 13594 at *3 (S.D.N.Y. Aug. 6, 2003) ("*Borden* has been interpreted as recognizing a court's power to entertain requests for provisional remedies in aid of arbitration even where the request for remedies does not accompany a motion to compel arbitration or to confirm an award."); *Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Constr. Co.*, 598 F. Supp. 754, 758 (S.D.N.Y. 1984) ("The fact that this dispute is to be arbitrated [in Paris under the rules of the ICC] does not deprive the Court of its authority to provide provisional remedies," such as a preliminary injunction).

8.     As explained below, the plaintiff and the defendants are parties to a pending arbitration.  On April 28, 2020, plaintiff submitted a Notice of Arbitration to the Hong Kong International Arbitration Centre (the "HKIAC") requesting for arbitration over disputes by plaintiff as the Claimant against defendants to this action and other Respondents (the "Hong Kong Arbitration").  The dispute concerns an investment made by plaintiff and the arbitration is subject to the Convention.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) since the relief sought pertains to bank accounts situated in this District, which are in the name of each of the defendants.

/ / /

-3-

10.    Plaintiff is informed and believes and thereon alleges that defendant Wisdomobile Group maintains bank account number 3302534130 at Silicon Valley Bank, 3003 Tasman Drive, Santa Clara, CA 95054 and that its last known balance in this account was approximately $2,969,105 ("Wisdomobile Group Bank Account").

11.    Plaintiff is informed and believes and thereon alleges that defendant Wisdomobile HK maintains bank account number 3302534164 at Silicon Valley Bank, 3003 Tasman Drive, Santa Clara, CA 95054, and that its last known balance in this account was approximately $952,539 ("Wisdomobile HK Bank Account").

## **BACKGROUND**

### A.    **The Hong Kong Court's Injunction Prohibiting Disposal Of Defendants' Assets Worldwide Pending Arbitration.**

12.    On April 22, 2020, Plaintiff CW Baice applied *ex parte* to the High Court of the Hong Kong Special Administrative Region Court of First Instance ("Hong Kong Court"), Case No. 14 of 2020, for the issuance of an injunction prohibiting the disposal of assets worldwide of defendants Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK as well as six other parties named as defendants.

13.    On April 23, 2020, the Hong Kong Court filed its Injunction Prohibiting Disposal of Assets Worldwide ("Injunction") against all nine of the parties named as defendants based on the submissions of CW Baice.  The Injunction included the three named defendants in this Complaint, Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK.  A copy of the Injunction is attached hereto as Exhibit A.  Among other things, the Injunction ordered defendants Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK not to dispose of or deal with or diminish the value of any of their assets in any way, whether within or outside of Hong Kong, whether in their own name or not, and whether solely or jointly owned up to the value of $13,880,000, unless the total

-4-

DAAR & NEWMAN, PLC

unencumbered value of all of defendants' assets, whether in or outside of Hong Kong, remains above $13,880,000.  The Injunction prohibition expressly included the Wisdomobile Group Bank Account and the Wisdomobile HK Bank Account.  The Injunction also prohibits defendants Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK from conducting any business that it had not been conducting on May 22, 2019.  The Injunction provides that it remains in force up to and including April 29, 2020, as the return date for further hearing by the Hong Kong Court unless the defendants pay the sum of $13,880,000 into the court or make provisions for security in that sum.

14.    The Hong Kong Court held a further hearing, including hearing from legal counsel for defendants Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK. On May 4, 2020, the Hong Kong Court filed its Order on the Injunction ("May 4 Order"), which, among other things, provides that the Injunction shall continue in force until an arbitration tribunal constituted in arbitration between the plaintiff and the defendants in accordance with the Hong Kong International Arbitration Centre Administered Rules and makes an order which expressly relates to the whole or part of the Injunction or further order of the Hong Kong Court.  A copy of the May 4 Order is attached hereto as Exhibit B.

**B.    The Hong Kong Arbitration And The Dispute Between The Parties.**

15.    On April 28, 2020, plaintiff CW Baice submitted its Notice of Arbitration to the HKIAC requesting arbitration over disputes concerning a share purchase agreement and a shareholders agreement.  A copy of the Notice of Arbitration is attached hereto as Exhibit C (without its voluminous exhibits).  The Notice of Arbitration, at ¶¶17-19, sets forth in detail the identical governing law and dispute resolution provisions of the share purchase agreement and the shareholders agreement.  Both agreements provide for Hong Kong law to apply and that any dispute is subject to arbitration by the HKIAC.  In addition, both agreements provide that any party to the dispute shall be entitled to seek

preliminary injunctive relief, if possible, from any court of competent jurisdiction pending the constitution of the arbitral tribunal.

16.    The Notice of Arbitration, at ¶¶21-59, sets forth the nature and pertinent facts of the dispute to be arbitrated.  Essentially, CW Baice made an investment of $13,880,000 for 5,330,261 Series A+ Preferred Shares, or then 8.82% of the issued share capital, of defendant Wisdomobile Group, which is a holding company that operates through a group of companies including defendants Wisdomobile Limited and Wisdomobile HK as specified in the share purchase agreement.  The investment was made pursuant to the share purchase agreement and plaintiff also entered into the shareholders agreement.  The business of Wisdomobile Group through the group of companies includes the mobile advertising business, including the business of distribution of mobile applications, mobile games and contents, an overseas application store, big data processing, mobile applications, and mobile advertising.  The closing for plaintiff's investment took place on June 4, 2019.

17.    The share purchase agreement and shareholders agreement contain comprehensive representations, warranties and covenants covering every aspect of the operations of the group of companies including those of defendants Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK.

18.    In November and December 2019, plaintiff CW Baice was shocked to learn that Zhu Yipeng, the Founder (as defined under the share purchase agreement and the shareholders agreement and a respondent to the Hong Kong Arbitration), several directors, senior management officers and employees of the group of companies were detained and arrested for investigations of suspected criminal offences of illegal control of computer information system and fraud.  The alleged illegal activities included (1) installing and running silent activation software development kits in the end-users' mobile phones, thereby realizing silent activation of promoted applications and fraudulent clicks of advertisement links without the end-users' authorization or knowledge, (2) installing and running programs to display advertisements of promoted products by using takeover

-6-

functions of applications without the authorization of the end-users, and (3) running application distribution programs to cause downloading of promoted applications without the authorization of the end-users. This has resulted in police-ordered seizures of servers and bank accounts in the People's Republic of China and closure of offices. By reason of the criminal investigations, all operations and businesses of the group of companies, including defendants Wisdomobile Group, Wisdomobile Limited and Wisdomobile HK were shut down. It is virtually impossible for these companies to resume their previous business operations anytime soon or at all. Further, the group of companies attempted to set up new overseas business without obtaining required approvals by plaintiff and other investors.

19.     As a result of the criminal investigations and further transfer of assets and spending by all the defendants to the Injunction, CW Baice is informed and believes and thereon alleges that the remaining available funds of the group of companies owned directly and indirectly by defendant Wisdomobile Group (including through defendants Wisdomobile Limited and Wisdomobile HK) as of April 20, 2020, were approximately $3,900,000. These funds are believed to be maintained in bank accounts in the United States, including the Wisdomobile Group Bank Account and the Wisdomobile HK Bank Account and possibly one or more other accounts that have not yet been disclosed to CW Baice.

20.     Due to these wrongdoings, plaintiff sent a notice, dated March 17, 2020, to defendants and others requesting that they stop all alleged illegal conducts and refrain from conducting new business without first obtaining the approval of the board of directors of Wisdomobile Group.

21.     After receiving no response to the March 17, 2020 notice, plaintiff sent a Notice of Rescission and Request for Indemnification on April 13, 2020 ("Notice of Rescission"). The Notice of Rescission sought to rescind the share purchase agreement or, alternatively, to request for indemnity of its loss and damages in the amount of $13,880,000.

VERIFIED COMPLAINT

22.    Plaintiff then sought and obtained the Injunction.  The Notice of Arbitration, ¶¶36-59, sets forth the breaches of the various representations, warranties and covenants that form the basis for the rescission of the share purchase agreement and claim for indemnity.

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief Pending Arbitration Against Defendants)

23.    CW Baice refers to paragraphs 1 through 22 hereinabove and incorporates them as though set forth in full.

24.    On April 23, 2020, CW Baice sent a copy of the Injunction to the Silicon Valley Bank and provided notice that the Injunction prohibited defendants' disposal of their assets worldwide, including specifically the Wisdomobile Group Bank Account and the Wisdomobile HK Bank Account.  CW Baice requested that pursuant to the Injunction, these two accounts should be frozen until further order from the Hong Kong Court.

25.    The Silicon Valley Bank has not agreed to freeze the Wisdomobile Group Bank Account and the Wisdomobile HK Bank Account and/or comply with the Injunction.  CW Baice is informed and believes and thereon alleges that the Silicon Valley Bank asserts that as a United States company it is not bound by the Injunction issued by the Hong Kong Court.

26.    CW Baice seeks immediate interim relief to preserve the status quo ante and prevent defendants from depleting the Wisdomobile Group Bank Account, the Wisdomobile HK Bank Account and any of their other bank accounts.  Without such relief, defendants can render plaintiff's arbitration claims meaningless and render an award by the HKIC tribunal ineffectual. CW Baice specifically seeks a temporary restraining order and preliminary injunction freezing these accounts until such time as an arbitration tribunal constituted renders an order expressly relating to such injunctive relief. / / /

VERIFIED COMPLAINT

WHEREFORE, CW Baice prays for judgment as follows:

1.      For injunctive relief against each defendant preventing the disposal of or diminishing the value of any its assets located in the United States, whether in its own name or not, including but not limited to the Wisdomobile Group Bank Account and the Wisdomobile HK Bank Account;

2.      That the injunctive relief continue pending the arbitration between the plaintiff and the defendants until the arbitration makes an order which expressly relates to such injunctive relief; and

3.      That the Court grant such other, further and different relief as the Court deems just and proper.

DATED:  May 26, 2020                DAAR & NEWMAN
                                    a Professional Law Corporation


                                    By: /s/ *Jeffery J. Daar*
                                    _____
                                    JEFFERY J. DAAR
                                    Attorneys for Plaintiff CW BAICE LIMITED

VERIFIED COMPLAINT

DAAR & NEWMAN, PLC

## VERIFICATION

I have read the foregoing **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF PENDING ARBITRATION** and know its contents.

I am the sole Director of CW Baice Limited, Plaintiff in this action, and am authorized to make this verification on its behalf and make this verification for that reason. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on or appear as information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 25, 2020

_____
SHA YE, Declarant

EXHIBIT

A

<div style="border:1px solid">
Claim nature:<br>
A. Non-monetary claim only<br>
B. Contract
</div>

Intended Action No. 86/2020

HCCT *i 4* /2020

## IN THE HIGH COURT OF THE
## HONG KONG SPECIAL ADMINISTRATIVE REGION
## COURT OF FIRST INSTANCE
## CONSTRUCTION & ARBITRATION PROCEEDINGS
## NO.            OF 2020

\*\*\*\*\*\*\*\*

IN THE MATTER of sections 21 and 45(2) of the Arbitration Ordinance (Cap. 609) and Articles 9 and 17J of the UNCITRAL Model Law on International Commercial Arbitration

and

IN THE MATTER of Order 73 of the Rules of the High Court (Cap. 4A)

\*\*\*\*\*\*\*\*

BETWEEN

CW BAICE LIMITED                                                    Plaintiff

and

THE WISDOMOBILE GROUP LIMITED                          1st Defendant
(formerly known as The Ocean Swell Group Limited)

THE WISDOMOBILE LIMITED                                     2nd Defendant
(formerly known as The Ocean Swell Limited)

WISDOMOBILE HK LIMITED（香港佰策有限公司）        3rd Defendant
(formerly known as Hong Kong Baice Limited（香港佰策有限公司）)

BEIJING BAICE TECHNOLOGY CO., LTD. (北京佰策科技有限公司)    4th Defendant

SHANGHAI ZHAOLIN TECHNOLOGY CO., LTD. (上海兆林科技有限公司)    5th Defendant

ZHUHAI BAICE TECHNOLOGY CO., LTD. (珠海佰策科技有限公司)    6th Defendant

BEIJING SHANGXING ZHIJIAN NETWORK TECHNOLOGY CO., LTD    7th Defendant
(北京上行至简网络科技有限公司)

MR. ZHU YIPENG (朱翼鹏)                                        8th Defendant

THE ROC FORTUNE LTD.                                          9th Defendant

## INJUNCTION PROHIBITING DISPOSAL OF
## ASSETS WORLDWIDE

<u>PENAL NOTICE</u>

**IF YOU, THE NAMED DEFENDANTS, DISOBEY THIS ORDER, YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND LIABLE TO IMPRISONMENT OR FINED OR YOUR ASSETS MAY BE SEIZED.**

**THIS IS A LEGAL DOCUMENT. THE CONSEQUENCES OF IGNORING ARE SERIOUS, IF IN DOUBT, YOU SHOULD ENQUIRE AS SOON AS POSSIBLE AT THE REGISTRY OF THE COURT ISSUING THE DOCUMENT, NAMELY LG1, HIGH COURT BUILDING, 38 QUEENSWAY, HONG KONG. YOU SHOULD ALSO CONSIDER TAKING THE ADVICE OF A SOLICITOR OR APPLYING FOR LEGAL AID**

因這是法律文件，忽視它可帶來嚴重的後果，如有疑問，請儘早向發出文件的法庭登記處（地址：香港金鐘道 38 號高等法院大樓低層 1 樓）查詢。你亦考慮聽取律師的意見或是申請法律援助

**IMPORTANT**

**NOTICE TO THE DEFENDANTS**

1.  This Order prohibits you from dealing with your assets up to the amount stated. The Order is subject to the exceptions which are set out in the Order. You should read the whole of this document carefully. You are advised to consult a solicitor as soon as possible. You have the right to ask the court to vary or discharge this Order.

2.  If you disobey this Order you may be found guilty of contempt of court and you and any of your directors may be sent to prison or fined or your assets may be seized.

**BEFORE THE HONOURABLE MR. JUSTICE K YEUNG IN CHAMBERS**

**(NOT OPEN TO PUBLIC)**

**ORDER**

An *ex parte* application was made on the 22nd day of April 2020 by counsel for CW Baice Limited, the plaintiff, to the Judge who read the draft Originating Summons and the affidavits listed in Schedule 1 and accepted the undertakings in Schedule 2 at the end of this Order. After hearing the application the Judge made the following Order.

IT IS ORDERED that:

1. **Restriction on disposal of assets**

   (1)  Each Defendant must not —

   (a)  remove from Hong Kong any of his assets which are within Hong Kong, whether in his own name or not, and whether solely or jointly owned, up to the value of USD 13,880,000 or its HONG KONG DOLLARS equivalent, or

   (b)  in any way dispose of or deal with or diminish the value of any of his assets, whether within or outside Hong Kong, whether in his own name or not, and whether solely or jointly owned up to the same value. This prohibition includes the following assets in particular any money in the following accounts:-

   Account Name: Beijing Baice Technology Co., Ltd. (北京佰策科技有限公司)
   Bank: China Merchants Bank, Beijing Branch, Dongsihuan Sub-branch
   Account Number: 110920322910902, 11092032298000028

   Account Name: Zhuhai Baice Technology Co., Ltd. (珠海佰策科技有限公司)
   Bank: China Minsheng Bank Co., Ltd., Hengqin Sub-branch of Guangdong Pilot Free Trade Zone
   Account Number: 630710709

Account Name: The Ocean Swell Group Limited (currently known as The Wisdomobile Group Limited)

Bank: Silicon Valley Bank

Account Number: 3302534130

Bank Address: 3003 Tasman Drive, Santa Clara, CA 95054, USA

Swift Code: SVBKUS6S

Account Name: Hong Kong Baice Limited (currently known as Wisdomobile HK Limited)

Bank: Silicon Valley Bank

Account Number: 3302534164

Bank Address: 3003 Tasman Drive, Santa Clara, CA 95054, USA

Swift Code: SVBKUKUS6S

Account Name: Shanghai Zhaolin Technology Co., Ltd.

(上海兆林科技有限公司)

Bank: Bank of Beijing Co., Ltd., Shanghai Jiading Sub-branch

Account Number: 20000038504731041022782

Account Name: Beijing Shangxing Zhijian Network Technology Co., Ltd.

(北京上行至简网络科技有限公司)

Bank: Bank of China Limited, Beijing Chaoyang Beilu Sub-branch

Account Number: 329869007291

(2)   If the total unencumbered value of the Defendants' assets in Hong Kong exceeds USD13,880,000 or its HONG KONG DOLLARS equivalent, the Defendant may remove any of those assets from Hong Kong or may dispose of or deal with them so long as the total unencumbered value of his assets still in Hong Kong remains above USD13,880,000 or its HONG KONG DOLLARS equivalent.

If the total unencumbered value of the Defendants' assets in Hong Kong does not exceed USD13,880,000 or its HONG KONG DOLLARS equivalent, the Defendants must not remove any of those assets from Hong Kong and must not dispose of or deal with any of them, but if he has other assets outside Hong Kong

the defendant may dispose of or deal with those assets so long as the total unencumbered value of all his assets, whether in or outside Hong Kong, remains above USD13,880,000 or its HONG KONG DOLLARS equivalent.

## DURATION OF THIS ORDER

This Order will remain in force up to and including 29th April 2020 (**"the return date"**), unless before then it is varied or discharged by a further order of the court. The application in which this Order is made shall come back to the court for further hearing on the return date unless the Defendants pay the sum of USD13,880,000 or its HONG KONG DOLLARS equivalent into court or make provision for security in that sum by some other method as provided for hereinabove and serve notice that they do not require the application to come back to court.

## EXCEPTIONS TO THIS ORDER

(1)   This Order does not prohibit each Defendant from spending HK$10,000 per week towards his ordinary and proper business expenses and/or his ordinary and proper business expenses and also a reasonable sum on legal advice and representation.

(2)   A Defendant may agree with the Plaintiff's solicitors that the above spending limits should be increased or that this Order should be varied in any other respect, but any such agreement must be in writing.

(3)   This Order shall cease to have effect if the Defendants provide security by paying the sum of USD13,880,000 or its HONG KONG DOLLARS equivalent into court or make provision for security in that sum by some other method agreed with the Plaintiff's solicitors or approved by the court.

## EFFECT OF THIS ORDER

(1) A Defendant who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

(2) A Defendant which is a corporation and which is ordered not to do something must not do it itself or by its directors, officers, employees or agents, or in any other way.


## THIRD PARTIES

(1) *Effect of this Order.* It is a contempt of court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned, fined, or have his assets seized.

(2) *Effect of this Order outside Hong Kong.* The terms of this Order do not affect or concern anyone outside Hong Kong until it is declared enforceable or is enforced by a court in another jurisdiction and then they are to affect him only to the extent they have been declared enforceable or have been enforced UNLESS such person is:

   (a) a person to whom this Order is addressed or an officer or an agent appointed by power of attorney of such a person; or

   (b) a person who is subject to the jurisdiction of this court and (i) has been given written notice of this Order at his residence or place of business within the jurisdiction of this court and (ii) is able to prevent acts or omissions outside the jurisdiction of this court which are a breach or assist in a breach of this Order.

(3) *Set off by banks.* This injunction does not prevent any bank from exercising any right of set-off it may have in respect of any facility which it gave to the Defendants before it was notified of this Order.

(4)  *Withdrawals by the Defendants*. No bank need to inquire as to the application or proposed application of any money withdrawn by the Defendants if the withdrawal appears to be permitted by this Order.

## BUSINESS

(1) Each of the 1st Defendant, the 2nd Defendant, the 3rd Defendant, the 4th Defendant, the 5th Defendant, the 6th Defendant and the 7th Defendant shall not conduct any business that it had not been conducting on 22 May 2019 unless prior written consent of the Plaintiff has been obtained.

## SERVICE OUT OF THE JURISDICTION AND SUBSTITUTED SERVICE

(1)  The Plaintiff may issue the Concurrent Originating Summons and serve it on each Defendant by courier at the addresses set out in the draft Originating Summons produced to the court together with this Order as soon as practicable.

(2)  If any of the Defendants wishes to defend the action he must acknowledge service within 28 days of being served with the Concurrent Originating Summons.

## UNDERTAKINGS

The Plaintiff gives to the court the undertakings set out in Schedule 2 to this Order.

## VARIATION OR DISCHARGE OF THIS ORDER

A Defendant (or anyone notified of this Order) may apply to the court at any time to vary or discharge this Order (or so much of it as affects that person,), but anyone wishing to do so should first inform the Plaintiff's solicitors.

**NAME AND ADDRESS OF PLAINTIFF'S SOLICITORS**

The Plaintiff's solicitors are:

Adrian Yeung & Cheng

Suite 1201-2A, 12th Floor, Golden Centre,

No. 188 Des Voeux Road C., Central, Hong Kong

Telephone: 28542278

Fax: 28542208

**INTERPRETATION OF THIS ORDER**

(1)    In this Order "he", "him" or "his" include "she", "her", "hers" and "it" or "its".

(2)    When there are two or more Defendants then (unless otherwise stated):

    (a)    references to "the Defendant" mean both or all of them;

    (b)    an order requiring "the Defendant" to do or not to do anything requires each defendant to do it or not to do it; and

    (c)    A requirement relating to service of this Order, or of any legal proceedings on "the Defendant" means on each of them.

**COSTS**

(1) Costs of this application be reserved.

Dated the 22nd day of April 2020

Registrar

## SCHEDULE 1

Affidavits

The Judge read the following affidavits before making this Order:

(1) Affirmation of Chan Wai Shing dated 21st April 2020 together with the exhibits referred thereto.

## SCHEDULE 2

Undertaking given to the court by the Plaintiff

(1) If the court later finds that this Order has caused loss to the Defendants or any other party and decides that the Defendants or that other party should be compensated for that loss, the Plaintiff will comply with any order the court may make.

(2) The plaintiff will on or before the 29th day of April 2020 cause a written guarantee in favour of the defendant in the sum of HK$5,000,000 to be issued from a bank having a place of business in Hong Kong, such guarantee being in respect of any order the court may make pursuant to the foregoing paragraph. The plaintiff will further, forthwith upon such issue, cause a copy of the guarantee to be served on the defendant.

(3) As soon as practicable, the Plaintiff will issue and serve on the Defendants one or more Notice of Arbitration claiming appropriate reliefs together with this Order.

(4) As soon as practicable the Plaintiff will serve on the Defendants a summons to be heard on the return date together with a copy of the affidavits and copiable exhibits containing the evidence relied on by the Plaintiff and a copy of the skeleton argument used at the application for this Order. Unless impracticable photographs of non-copiable exhibits should also be served.

(5) Anyone notified of this Order will be given a copy of it by the Plaintiff's solicitors.

(6) The Plaintiff will pay the reasonable costs of anyone other than the Defendants which have been incurred as a result of this Order including the costs of ascertaining whether that person holds any of the Defendants' assets and if the court later finds that this Order has caused such a person loss, and decides that such person should be compensated for that loss, the Plaintiff will comply with any order the court may make.

(7) If for any reason this Order ceases to have effect (including in particular where the Defendants provide security as provided for above or the Plaintiff does not provide a bank guarantee as provided for above), the Plaintiff will forthwith take all reasonable steps to inform, in writing, any person or company to whom he has given notice of this Order, or who he has reasonable grounds for supposing may act upon this Order, that it has ceased to have effect.

**PENAL NOTICE**

IF YOU, THE NAMED
DEFENDANTS, DISOBEY
THIS ORDER, YOU MAY
BE HELD TO BE IN
CONTEMPT OF COURT
AND LIABLE TO
IMPRISONMENT OR
FINED OR YOUR ASSETS
MAY BE SEIZED.

Dated this 23rd day of April 2020

Adrian Yeung & Cheng

Intended Action No. 86/2020
HCCT        /2020

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
CONSTRUCTION & ARBITRATION PROCEEDINGS
NO.              OF 2020

IN THE MATTER of sections 21 and 45(2) of
the Arbitration Ordinance (Cap. 609) and
Articles 9 and 17J of the UNCITRAL Model
Law on International Commercial Arbitration

And
IN THE MATTER of Order 73 of the Rules of
the High Court (Cap. 4A)

BETWEEN

| | |
|---|---|
| CW BAICE LIMITED | Plaintiff |
| and | |
| THE WISDOMOBILE GROUP LIMITED | 1st Defendant |
| (formerly known as The Ocean Swell Group Limited) | |
| THE WISDOMOBILE LIMITED | 2nd Defendant |
| (formerly known as The Ocean Swell Limited) | |
| WISDOMOBILE HK LIMITED（香港佰策有限公司) | 3rd Defendant |
| (formerly known as Hong Kong Baice Limited | |
| （香港佰策有限公司)) | |
| BEIJING BAICE TECHNOLOGY CO., LTD. | 4th Defendant |
| (北京佰策科技有限公司) | |
| SHANGHAI ZHAOLIN TECHNOLOGY CO., LTD. | 5th Defendant |
| (上海兆林科技有限公司) | |
| ZHUHAI BAICE TECHNOLOGY CO., LTD. | 6th Defendant |
| (珠海佰策科技有限公司) | |
| BEIJING SHANGXING ZHIJIAN NETWORK | 7th Defendant |
| TECHNOLOGY CO., LTD | |
| (北京上行至简网络科技有限公司) | |
| MR. ZHU YIPENG (朱翼鹏) | 8th Defendant |
| THE ROC FORTUNE LTD. | 9th Defendant |

**INJUNCTION ORDER**

Filed on the 23rd day of April 2020

Messrs. Adrian Yeung & Cheng,
Solicitors for the Plaintiff,
Suit 1201-2A, 12th Floor, Golden Centre,
No. 188. Des Voeux Road C.,
Central,-Hong Kong

Tel: 2854 2278  Fax: 2854 2208
Ref: CWS/16820/L/CWS

**EXHIBIT B**

HCCT 14/2020

**IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
CONSTRUCTION & ARBITRATION PROCEEDINGS
NO. 14 OF 2020**

\*\*\*\*\*\*\*\*

IN THE MATTER of sections 21 and 45(2) of the
Arbitration Ordinance (Cap. 609) and Articles 9
and 17J of the UNCITRAL Model Law on
International Commercial Arbitration

and

IN THE MATTER of Order 73 of the Rules of the
High Court (Cap. 4A)

\*\*\*\*\*\*\*\*

BETWEEN

| | |
|---|---|
| CW BAICE LIMITED | Plaintiff |
| and | |
| THE WISDOMOBILE GROUP LIMITED<br>(formerly known as The Ocean Swell Group Limited) | 1st Defendant |
| THE WISDOMOBILE LIMITED<br>(formerly known as The Ocean Swell Limited) | 2nd Defendant |
| WISDOMOBILE HK LIMITED（香港佰策有限公司）<br>(formerly known as Hong Kong Baice Limited （香港佰策有限公司）) | 3rd Defendant |
| BEIJING BAICE TECHNOLOGY CO., LTD. (北京佰策科技有限公司) | 4th Defendant |
| SHANGHAI ZHAOLIN TECHNOLOGY CO., LTD. (上海兆林科技有限公司) | 5th Defendant |
| ZHUHAI BAICE TECHNOLOGY CO., LTD. (珠海佰策科技有限公司) | 6th Defendant |
| BEIJING SHANGXING ZHIJIAN NETWORK TECHNOLOGY CO., LTD<br>(北京上行至简网络科技有限公司) | 7th Defendant |
| MR. ZHU YIPENG (朱翼鹏) | 8th Defendant |
| THE ROC FORTUNE LTD. | 9th Defendant |

**BEFORE DEPUTY HIGH COURT JUDGE BURNS, SC IN CHAMBERS**

**(NOT OPEN TO PUBLIC)**

**ORDER**

UPON the application of the Plaintiff by way of Inter Partes Summons filed herein on 23 April 2020 (the "Inter Partes Summons")

AND UPON reading the Affirmation of Chan Wai Shing filed herein on 23 April 2020 together with the exhibits referred to therein; and the 2nd Affirmation of Chan Wai Shing dated 28 April 2020 together with the exhibits referred to therein

AND UPON hearing the counsel for the Plaintiff, the counsel for the 1st – 7th Defendants and the 8th – 9th Defendants being absent

IT IS ORDERED that: -

1. The *ex parte* Injunction Order granted by the Honourable Mr. Justice K Yeung on 22 April 2020 (the "***Ex Parte* Order**") be continued until:

   (a) An arbitration tribunal constituted in arbitration between the Plaintiff and the Defendants in accordance with the Hong Kong International Arbitration Centre Administered Rules makes an order which expressly relates to the whole or part of this order; or

   (b) Further order;

2. Each Defendant must inform the Plaintiff in writing at once of all his assets of an individual value of HK$250,000 or more, whether within or outside Hong Kong, whether in his own name or not, and whether solely or jointly owned, giving the value, location and details of all such assets. The Defendants are entitled to refuse to provide some or all of this information on the grounds that it may incriminate him. Time for compliance to be within 28 days from the date of this Order;

3. This information must be confirmed in an affidavit which must be served on the Plaintiff's solicitors within 28 days from the date of this Order;

4. Leave be granted to the Defendants to file evidence in opposition to the continuation of the *Ex Parte* Order within 28 days upon service of this Order;

5.  Leave be granted to the Plaintiff to file evidence in reply within 14 days thereafter;

6.  The continuation of the *Ex Parte* Order be adjourned for substantive argument before a judge at the earliest date possible, with 1 day reserved;

7.  The *Ex Parte* Order be varied as follows:

    "The Plaintiff may serve the Concurrent Originating Summons on the 2nd Defendant and the 9th Defendant at the addresses set out in the Concurrent Originating Summons by registered post."

8.  Undertaking given to the court by the Plaintiff under paragraph 2 Schedule 2 of the *Ex Parte* Order be amended as follows:

    "The Plaintiff do within 3 working days from 29 April 2020 cause a sum of HK$5,000,000 to be paid into court as security in favour of the Defendants in respect of any order the court may make pursuant to the foregoing paragraph."

9.  Leave be granted for Messrs. Hauzen LLP to file Notice to Act in respect of the 1st – 7th Defendants within the day of this Order;

10. Liberty to apply;

11. Costs reserved.

Dated the 29th day of April 2020

Registrar

HCCT 14/2020

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
CONSTRUCTION & ARBITRATION PROCEEDINGS
NO. 14 OF 2020

IN THE MATTER of sections 21 and 45(2) of
the Arbitration Ordinance (Cap. 609) and
Articles 9 and 17J of the UNCITRAL Model
Law on International Commercial Arbitration

And

IN THE MATTER of Order 73 of the Rules of
the High Court (Cap. 4A)

BETWEEN

| | |
|---|---|
| CW BAICE LIMITED | Plaintiff |
| and | |
| THE WISDOMOBILE GROUP LIMITED | 1st Defendant |
| (formerly known as The Ocean Swell Group Limited) | |
| THE WISDOMOBILE LIMITED | 2nd Defendant |
| (formerly known as The Ocean Swell Limited) | |
| WISDOMOBILE HK LIMITED （香港佰策有限公司） | 3rd Defendant |
| (formerly known as Hong Kong Baice Limited | |
| （香港佰策有限公司）） | |
| BEIJING BAICE TECHNOLOGY CO., LTD. | 4th Defendant |
| (北京佰策科技有限公司) | |
| SHANGHAI ZHAOLIN TECHNOLOGY CO., LTD. | 5th Defendant |
| (上海兆林科技有限公司) | |
| ZHUHAI BAICE TECHNOLOGY CO., LTD. | 6th Defendant |
| (珠海佰策科技有限公司) | |
| BEIJING SHANGXING ZHIJIAN NETWORK | 7th Defendant |
| TECHNOLOGY CO., LTD | |
| (北京上行至简网络科技有限公司) | |
| MR. ZHU YIPENG (朱翼鹏) | 8th Defendant |
| THE ROC FORTUNE LTD. | 9th Defendant |

**ORDER**

Filed on the   4th   day of May 2020

Messrs. Adrian Yeung & Cheng,
Solicitors for the Plaintiff,
Suit 1201-2A, 12th Floor, Golden Centre,
No. 188. Des Voeux Road C.,
Central,-Hong Kong
Tel: 2854 2278  Fax: 2854 2208
Ref: CWS/16820/L/CWS

**EXHIBIT C**

**IN THE MATTER OF AN ARBITRATION UNDER THE HONG KONG INTERNATIONAL ARBITRATION CENTER ADMINISTERED ARBITRATION RULES 2018**

**CW BAICE LIMITED**                Claimant

**V.**

**THE WISDOMOBILE GROUP LIMITED**     1st Respondent
(formerly known as The Ocean Swell Group Limited)

**THE WISDOMOBILE LIMITED**     2nd Respondent
(formerly known as The Ocean Swell Limited)

**WISDOMOBILE HK LIMITED**     3rd Respondent
(formerly known as Hong Kong Baice Limited)

**BEIJING BAICE TECHNOLOGY CO., LTD.**     4th Respondent

**SHANGHAI ZHAOLIN TECHNOLOGY CO., LTD.**     5th Respondent

**ZHUHAI BAICE TECHNOLOGY CO., LTD.**     6th Respondent

**BEIJING SHANGXING ZHIJIAN NETWORK TECHNOLOGY CO., LTD.**
7th Respondent

**MR. ZHU YIPENG**     8th Respondent

**THE ROC FORTUNE LTD.**     9th Respondent

_____

**NOTICE OF ARBITRATION**

_____

**28 April 2020**

## I.    **INTRODUCTION**

1.    This Notice of Arbitration is submitted by CW Baice Limited (the "**Claimant**") to the Hong Kong International Arbitration Center (the "**HKIAC**") pursuant to Article 4 of the 2018 HKIAC Administered Arbitration Rules (the "**HKIAC Rules**") requesting for arbitration over the disputes more particularly described hereinbelow between the Claimant on one hand and multiple Respondents on the other, i.e. the Seller Parties defined under the Series A+ Preferred Shares Purchase Agreement dated 22 May 2019 (the "**SPA**") arising out of or in connection with the SPA in accordance with Section 9.17 of the SPA, as well as the Second Amended and Restated Shareholders Agreement (the "**SHA**") in accordance with Section 10.13 of the SHA. The multiple Respondents include:

(1) The Wisdomobile Group Limited (formerly known as The Ocean Swell Group Limited, the "**Company**" or the "**1st Respondent**"),

(2) The Wisdomobile Limited (formerly known as The Ocean Swell Limited, the "**BVI Company**" or the "**2nd Respondent**"),

(3) Wisdomobile HK Limited (formerly known as Hong Kong Baice Limited, 香港佰策有限公司 in Chinese, the "**HK Company**" or the "**3rd Respondent**"),

(4) Beijing Baice Technology Co., Ltd. (北京佰策科技有限公司 in Chinese, the "**Domestic Company**" or the "**4th Respondent**"),

(5) Shanghai Zhaolin Technology Co., Ltd. (上海兆林科技有限公司 in Chinese, "**Shanghai Zhaolin**" or the "**5th Respondent**"),

(6) Zhuhai Baice Technology Co., Ltd. (珠海佰策科技有限公司 in Chinese, "**Zhuhai Baice**" or the "**6th Respondent**"),

(7) Beijing Shangxing Zhijian Network Technology Co., Ltd. (北京上行至简网络科技有限公司 in Chinese, the "**WFOE**" or the "**7th Respondent**"),

(8) Mr. Zhu Yipeng (朱翼鹏 in Chinese, the "**Founder**", "**Mr. Zhu**" or the "**8th Respondent**"), and

(9) The Roc Fortune Ltd. (the "**Founder Holdco**" or the "**9th Respondent**") (together with the aforementioned eight Respondents, the "**Seller Parties**" or the "**Respondents**", and each a "**Respondent**").

2.    Except as expressly set out herein, the capitalized terms used herein but not otherwise defined shall have the same meanings assigned to them in the SPA.

## II.   THE PARTIES

## A.   THE CLAIMANT

3.   The Claimant is a company incorporated and existing under the laws of the British Virgin Islands, whose registered address is at:

Trinity Chambers, P.O. Box 4301,
Road Town, Tortola, British Virgin Islands

4.   The Claimant is represented in this arbitration by:

| | |
|---|---|
| Legal Representatives: | Zhong Lun Law Firm |
| | Huawei Sun / Chang Liu / Lian Lu / Xingyu Wan |
| | 31, 33, 36 & 37/F, SK Tower |
| | 6A Jianguomenwai Avenue |
| | Chaoyang District, 100022, Beijing |
| | P. R. China |
| Tel: | +86 10 5957 2025 / 2407 |
| Fax: | +86 10 6568 1022 |
| Email: | sunh@zhonglun.com |
| | liuchang@zhonglun.com |
| | lulian@zhonglun.com |
| | wanxingyu@zhonglun.com |
| | |
| | Clark Wang |
| | Sir Oswald Cheung's Chambers |
| | 10/F New Henry House |
| | No. 10 Ice House St. |
| | Central, Hong Kong |
| Tel: | +852 2524 2156 |
| Fax: | +852 2810 5656 |
| Email: | clark@siroswald.com |

5.   The Claimant requests that all communications directed to the Claimant relating to this arbitration be sent to its legal representatives specified above.

## B.   THE RESPONDENTS

6.   The 1st Respondent, The Wisdomobile Group Limited (formerly known as The Ocean Swell Group Limited) is a company incorporated and existing under the laws of Cayman Islands, whose registered address, telephone number, fax number and email address are:

| Registered Address | P.O. Box 31119 Grand Pavilion |
| | Hibiscus Way, 802 West Bay Road |
| | Grand Cayman |
| | KYI – 1205 Cayman Islands |
| Tel: | |
| Fax: | |
| Email: | |

7.   The 2nd Respondent, Wisdomobile Limited (formerly known as The Ocean Swell Limited) is a company incorporated and existing under the laws of the British Virgin Islands, whose registered address, telephone number, fax number and email address are:

| Registered Address | Trinity Chambers, P.O. Box 4301 |
| | Road Town, Tortola |
| | British Virgin Islands |
| Tel: | |
| Fax: | |
| Email: | |

8.   The 3rd Respondent, Wisdomobile HK Limited (formerly known as Hong Kong Baice Limited, 香港佰策有限公司 in Chinese) is a company organized and existing under the laws of Hong Kong, whose registered address, telephone number, fax number and email address are:

| Registered Address | Unit 417, 4th Floor, Lippo Centre |
| | Tower Two No.89 Queensway, Admiralty |
| | Hong Kong |
| Tel: | +852 3107 0682 |
| Fax: | +852 3107 0683 |
| Email: | |

9.   The 4th Respondent, Beijing Baice Technology Co., Ltd. (北京佰策科技有限公司 in Chinese) is a limited liability company organized and existing under the laws of the People's Republic of China (the "**PRC**"), whose registered address, telephone number, fax number and email address are:

| Registered Address | Room 301, Floor 3, No. 8 Huateng Century |
| | Headquarter Park Project |
| | No. 9 Chenjialin Yard, Balizhuang Village |
| | Gaobeidian Town, Chaoyang District |
| | Beijing, the PRC |
| Tel: | +86 10 8577 7431 |

Fax:
Email:                    baice@baice100.com

10.  The 5th Respondent, Shanghai Zhaolin Technology Co., Ltd. (上海兆林科技有限
公司 in Chinese) is a company incorporated and existing under the laws of the
PRC, whose registered address, telephone number, fax number and email address
are is at:

Registered Address        Room J7118, Building No. 2
                          No. 4268 Zhennan Road, Jiading District
                          Shanghai, the PRC
Tel:                      +86 10 8577 7431
Fax:
Email:                    jipeipei@baice100.com

11.  The 6th Respondent, Zhuhai Baice Technology Co., Ltd. (珠海佰策科技有限公
司 in Chinese) is a company incorporated and existing under the laws of the PRC,
whose registered address, telephone number, fax number and email address are:

Registered Address        Room 105 – 65277 (concentrated office zone)
                          No. 6 Baohua Road, Hengqin New District
                          Zhuhai, Guangdong Province, the PRC
Tel:                      +86 10 8577 7431
Fax:
Email:

12.  The 7th Respondent, Beijing Shangxing Zhijian Network Technology Co., Ltd. (北
京上行至简网络科技有限公司 in Chinese) is a company incorporated and
existing under the laws of the PRC, whose registered address, telephone number,
fax number and email address are:

Registered Address        Room 302, Floor 3, No. 8 Huateng Century
                          Headquarter Park Project
                          No. 9 Chenjialin Yard, Balizhuang Village
                          Gaobeidian Town, Chaoyang District
                          Beijing, the PRC
Tel:
Fax:
Email:

13.  The 8th Respondent, Mr. Zhu Yipeng (朱翼鹏先生) is a Chinese citizen with the
Chinese Resident Identity Card No. 110111197806283030, whose address,
telephone number, fax number and email address are:

4

| Address | Room 808, 65th Building |
| | Balizhuang Xili, Chaoyang District |
| | Beijing, the PRC |
| Tel: | +86 139 1173 5868 |
| Fax: | |
| Email: | zhuyipeng360@126.com |

14. The 9th Respondent, The Roc Fortune Ltd. is a company incorporated and existing under the laws of the British Virgin Islands, whose registered address, telephone number, fax number and email address are:

| Address | Trinity Chambers, P.O. Box 4301 |
| | Road Town, Tortola |
| | British Virgin Islands |
| Tel: | |
| Fax: | |
| Email: | |

15. It is agreed under Section 9.07 and Exhibit E of the SPA and Section 10.1 and Exhibit B of the SHA that all communications and correspondence to each of the Seller Parties shall be addressed to the following address:

| Attention: | YANG Nan (杨楠) |
| Address: | Floor 3, No. H Huateng Century |
| | Chaoyang District, Beijing |
| | P.R. China |
| Tel: | +86 137 1886 1681 |
| Email: | yangnan@baice100.com |

16. Identity of the representatives of the Respondents is not known to the Claimant.


III.  **THE GOVERNING LAW AND THE ARBITRATION AGREEMENTS**

17. The SPA shall be governed by the laws of Hong Kong excluding conflicts of law principles. Section 9.03 of the SPA provides as follows:

*SECTION 9.03 Governing Law.*

*This Agreement shall be governed and construed exclusively in accordance with the Laws of Hong Kong Special Administrative Region of the PRC ("**Hong Kong**"), without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of Hong Kong to the rights and duties of the Parties hereunder.*

18. Any dispute between the Claimant and the Respondents arising out of or relating

to the SPA is subject to an arbitration agreement, set out in Section 9.17 of the SPA, of which the full terms are as follows:

*SECTION 9.17 Dispute Resolution*

*(a) <u>Arbitration.</u> Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (the "**HKIAC**") under the HKIAC Administered Arbitration Rules in force when the notice of arbitration is submitted (the "**Arbitration Rules**"). If the Arbitration Rules are in conflict with the provisions of this <u>Section 9.17</u>, including the provisions concerning the appointment of arbitrators, the provisions of this <u>Section 9.17</u> shall prevail.*

*(b) There shall be three arbitrators. The complainant and the respondent to such dispute shall each select one arbitrator within thirty (30) days after giving or receiving the demand for arbitration. Such arbitrators shall be freely selected, and the Parties shall not be limited in their selection to any prescribed list. The chairman of the HKIAC shall select the third arbitrator, who shall be qualified to practice Law in Hong Kong. If either Party to the arbitration does not appoint an arbitrator who has consented to participate within thirty (30) days after selection of the first arbitrator, the relevant appointment shall be made by the chairman of the HKIAC.*

*(c) The arbitration proceedings shall be conducted in English. The seat of arbitration shall be Hong Kong.*

*(d) The award of the arbitration tribunal shall be final and binding upon the disputing Parties, and any Party to the dispute may apply to a court of competent jurisdiction for enforcement of such award.*

*(e) Any Party to the dispute shall be entitled to seek preliminary injunctive relief, if possible, from any court of competent jurisdiction pending the constitution of the arbitral tribunal.*

19. The SHA contains the identical clauses on governing law (Section 10.4) and arbitration (Section 10.13). To be specific:

*SECTION 10.4 Governing Law.*

*This Agreement shall be governed by and construed exclusively in accordance with the internal laws of the Hong Kong Special Administrative Zone of the People's Republic of China ("**Hong Kong**"), without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the*

*internal laws of Hong Kong to the rights and duties of the Parties hereunder.*

<u>*SECTION 10.13 Dispute Resolution.*</u>

*(a) <u>Arbitration.</u> Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (the "**HKIAC**") for arbitration in Hong Kong. The arbitration shall be conducted in accordance with the HKIAC Administered Arbitration Rules in force when the notice of arbitration is submitted (the "**Arbitration Rules**"). If the Arbitration Rules are in conflict with the provisions of this Section 10.13, including the provisions concerning the appointment of arbitrators, the provisions of this Section 10.13 shall prevail.*

*(b) There shall be three arbitrators. The complainant and the respondent to such dispute shall each select one arbitrator within thirty (30) days after giving or receiving the demand for arbitration. Such arbitrators shall be freely selected, and the Parties shall not be limited in their selection to any prescribed list. The chairman of the HKIAC shall select the third arbitrator, who shall be qualified to practice law in Hong Kong. If either party to the arbitration does not appoint an arbitrator who has consented to participate within thirty (30) days after selection of the first arbitrator, the relevant appointment shall be made by the chairman of the HKIAC.*

*(c) The arbitration proceedings shall be conducted in English. The seat of arbitration shall be Hong Kong.*

*(d) The award of the arbitration tribunal shall be final and binding upon the disputing parties, and any party to the dispute may apply to a court of competent jurisdiction for enforcement of such award.*

*(e) Any party to the dispute shall be entitled to seek preliminary injunctive relief, if possible, from any court of competent jurisdiction pending the constitution of the arbitral tribunal.*

20.  Pursuant to Article 29 of the HKIAC Rules, the Claimant requests that the disputes and claims arising out of or in connection with the SPA and the SHA be made in a single arbitration, as all the conditions set out in Article 29 have been met.

## IV.    NATURE AND CIRCUMSTANCES OF THE DISPUTES

## A.    THE CONCLUSION OF THE SPA AND THE CLOSING

21.    The dispute concerns the investment made by the Claimant in the Company, which conducts business through the Group Companies in the mobile advertising business. The "**Group Companies**" include the Company, the BVI Company, the HK Company and the "**PRC Companies**", which in turn consist of the WFOE, the Domestic Company, Shanghai Zhaolin, Zhuhai Baice, and all their direct or indirect subsidiaries incorporated in the PRC. Due to the restrictions of foreign investors' ownership of the internet telecommunications value-added services industry in Mainland China, the Domestic Company, like many other PRC internet companies, established a VIE (i.e. Variable Interest Entity) structure (the "**VIE Structure**") to solve the foreign financing problems. It means that the shareholders of the Domestic Company, including the Founder, incorporated the Company to attract foreign investors as well as to open the possibility of future listing, which in turn sets up the BVI Company and the HK Company to own the WFOE in Mainland China. The WFOE then obtained complete control, via a series of contractual arrangements with the Domestic Company and the shareholders of the Domestic Company over the management and operation of the Domestic Company and all its controlled subsidiaries and took over all the profits generated by the Domestic Company and all its controlled subsidiaries. As such, it is supposed that the actual shareholding in the Company should reflect the true ownership over the interest in the Domestic Company. Such a VIE Structure was already in place prior to the Claimant's investment.

22.    The Group Companies were stated to be engaged in the business of distribution of mobile applications, mobile games and contents, overseas application store, big data processing, mobile application and mobile advertising (the "**Business**"). In view of the VIE Structure, the Business was primarily conducted by the Domestic Company, Zhuhai Baice, Shanghai Zhaolin and all their direct or indirect subsidiaries incorporated in the PRC, for example Beijing Shengshi Qingyun Technology Co., Ltd. (北京盛世清云科技有限公司 in Chinese, "**Beijing Shengshi**", collectively the "**VIE Entities**"). Zhuhai Baice was the main operating entity generating revenue and profits.

23.    By the time the Claimant entered into the scene, there had already been several rounds of financings by way of issuance of angel preferred shares and series A preferred shares. The Claimant was interested to make further capital contributions to the Company with a view to gaining good commercial returns. For this purpose, the Claimant entered into the SPA with two other investors on 22 May 2019 and subscribed 5,330,261 Series A+ Preferred Shares of the Company (the "**Relevant Shares**") for a consideration of USD 13,880,000 (the "**Purchase Price**") (*see*

**Exhibit C-1**). The Respondents, as Seller Parties, jointly and severally made numerous representations, warranties and covenants to the Claimant, and agreed to jointly and severally indemnify and hold harmless the Claimant from and against any and all losses and damages suffered by the Claimant as a result of any inaccuracy in or breach of these representations, warranties and covenants.

24. On the same day as the SPA, the "**SHA**" (*see* **Exhibit C-2**) was entered into amongst the same parties of the SPA as well as the following additional parties: Microfountain Holdings Limited; TOP STRIDE LIMITED; and Songchen International Limited.

25. The Closing took place on 4 June 2019 as scheduled, with the Share Certificate issued to the Claimant against the Claimant's payment of the Purchase Price USD 13,880,000 (*see* **Exhibit C-3**). In the meantime, the Claimant's designated party Nantong Chengwei Changqing Equity Investment Partnership (Limited Partnership) subscribed a registered capital in the amount of RMB 991,429 in the Domestic Company, which in essence mirrored the Claimant's shareholding interests in the Company. As of the Closing, the Company's valuation stood at USD 157,369,615.

26. Following the closing of a new investment by another series A+ investor Prospect Avenue Capital Limited Partnership ("**PAC**"), the Fourth Amended and Restated Memorandum and Articles of Association of the Company (the "**Restated Articles**", *see* **Exhibit C-4** ) was passed on 9 September 2019.

27. For better illustration, the VIE Structure and the Company's shareholding structure immediately after the Closing is set out at Annex 1.

## B. THE FACTS LEADING TO THIS ARBITRATION

28. Not long after the Closing, it came as a great shock to the Claimant that the Founder, several directors, senior management officers and employees of the Group Companies totalling about 40 people (the "**Criminal Suspects**") were detained and arrested by the public security bureaus of Fuyang Branch of Hangzhou City and Yiwu City of Zhejiang Province (the "**Zhejiang Police**") on 13 November 2019 and 20 December 2019 for investigations of suspected criminal offences of illegal control of computer information system and fraud (the "**Criminal Investigations**"). It was accused that the VIE Entities and the Criminal Suspects were engaged in three types of illegal activities in conducting mobile advertisement businesses: (1) installing and running the silent activation SDKs (i.e. the Software Development Kits) in the end-users' mobile phones, thereby realising silent activation of promoted APPs and fraudulent clicks of advertisement links without the end-users' authorisation; (2) installing and running programmes to

display advertisements of the promoted products by using takeover function of other APPs without the authorisation of the end-users; and (3) running the APP distribution programmes to cause downloading the promoted APPs without the authorisation of the end-users (the "**Illegitimate Businesses**").

29.   As a result, the Group Companies' servers located in Xi'an City have been sealed up and the major bank accounts of the VIE Entities have been frozen by the Zhejiang Police. In the meantime, the Beijing offices of the PRC Companies have been sealed up and prevented from operation.

30.   The business of the Group Companies has come to a halt. The Founder and other key employees of the Group Companies have not been attending to work since 13 November 2019. Further, the Claimant was informed that the business partners of the VIE Entities have all suspended business dealings with them.

31.   Further, the Group Companies attempted to set up new overseas business without obtaining the requisite approval of the Claimant and other investors in accordance with the SHA and the Restated Articles.

32.   Due to the above wrong-doings, the Claimant sent a letter dated 17 March 2020 (the "**Notice of 17 March 2020**", *see* **Exhibit C-5**) to the Respondents (and some key management members of the Group Companies) and Beijing Shengshi, requesting that the Respondents stop the Illegitimate Businesses and refrain from conducting new business without obtaining the approval of the board of directors of the Company.

33.   Having received no response to its Notice of 17 March 2020, the Claimant sent a Notice of Rescission and Request for Indemnification on 13 April 2020 (the "**Notice of 13 April 2020**", *see* **Exhibit C-6**), seeking to rescind the SPA or alternatively, to request for indemnity of its loss and damages in the amount of USD 13,880,000.

34.   It turned out that the Respondents have set up a new company Changsha Kobolink Technology Co., Ltd. (长沙库布网络科技有限公司 in Chinese, "**Changsha Kobolink**") in furtherance of their breaches. It was alleged that Changsha Kobolink was established to conduct business under a new VIE arrangement with the WFOE and by doing so, was intended to be separated from the Criminal Investigations. For the purpose of evading potential freezing orders as a result of the continued investigations by the Zhejiang Police, the Respondents caused the WFOE to transfer RMB 9,000,000 to Changsha Kobolink.  The Claimant was only informed of the above development on 22 April 2020.

35.   In view of the seriousness of the Respondents' breach, the Claimant has no alternative but to commence this arbitration. At the application of the Claimant, the High Court of the Hong Kong issued a worldwide injunction dated 22 April

2020 against the Respondents prohibiting each of them from dealing with their assets up to USD 13,880,000 and prohibiting each of the 1st Respondent, the 2nd Respondent, the 3rd Respondent, the 4th Respondent, the 5th Respondent, the 6th Respondent and the 7th Respondent from conducting any business that it had not been conducting on 22 May 2019.

## C.  RESPONDENTS' VARIOUS BREACHES UNDER THE SPA AND THE SHA

36.   The SPA and the SHA contain comprehensive representations, warranties and covenants made by the Seller Parties covering every aspect of the Group Companies' operation and specifically requiring the Founder's commitment to the business of the Group Companies. These representations, warranties and covenants shall be true, correct, complete and not misleading not only as of the date of the execution of the SPA and the Closing Date, but also survive the Closing and any investigation made by any Party pursuant to Section 9.04 of the SPA. It was in reliance of these representations, warranties and covenants that the Claimant decided to enter into the SPA and the SHA with the Respondents.

37.   However, as it was unfolded by the Criminal Investigations, the Respondents committed breaches of various representations, warranties and covenants, which are set out in more detail below, and such breaches continue to last until now.

**Failure to comply with all applicable Laws and regulations**

38.   The Respondents jointly and severally represented, warranted and covenanted to the Claimant that (the "**Compliance Representations**"):

38.1   There is no Action pending or currently threatened against any Group Companies or against any officer, director or employee of each Group Company in connection with their relations with, or actions taken on behalf of any Group Company (*see* Section 4.10 of the SPA);

38.2   None of the Seller Parties is or has been in violation of any applicable Law in respect of the conduct of its business. None of the Group Companies is under investigation with respect of a violation of any Law (*see* Sections 4.11 and 4.12 of the SPA);

38.3   Each of the PRC Companies is operating its business in full compliance with all relevant legal requirements (*see* Section 4.25(f) of the SPA);

38.4   The Seller Parties shall comply with all applicable Laws in the PRC in connection with the operations of the Group Companies (*see* Section 6.10 of the SPA); and

38.5    The Seller Parties shall, and the Founder shall cause each Group Company, to comply with all applicable Laws and regulations in the PRC in connection with the operations of the Group Companies (*see* Section 9.7 of the SHA).

39.    However, the Criminal Investigations and probably subsequent criminal convictions and penalties speak for the Respondents' violation of the above representations, warranties and covenants by carrying out the Illegitimate Businesses contrary to various PRC laws including:

39.1    Article 224 of the PRC Criminal Law (《中华人民共和国刑法》) (Documentary Fraud), which sets out criminal penalties for fraudulent obtaining the other party's money and properties by way of contract;

39.2    Article 285 of the PRC Criminal Law (Unlawful Interference with Computer Information System), which sets out criminal penalties for intruding into others' computer system, illegal accessing the data stored, processed or transmitted in the computer information system or illegal control of the computer information system in violation of the state regulations.

39.3    The state regulations referred to in Article 285 of the PRC Criminal Law include:

(a)    Article 22(1) of the PRC Cybersecurity Law (《中华人民共和国网络安全法》), which forbids the installation of malicious software and regulates the security risk;

(b)    Article 27 of the PRC Cybersecurity Law, which forbids activities endangering cybersecurity such as illegally intruding into others' network and interfering with the normal function of others' network;

(c)    Article 41 of the PRC Cybersecurity Law, which requires prior consent of the individual when a network operator collects and uses any personal information;

(d)    Article 48 (1) of the PRC Cybersecurity Law, which forbids the installation of malicious software when an individual or an organisation transmits electronic data and provides any application software;

(e)    Article 7 of the Regulations of the PRC on Protecting the Safety of Computer Information Systems (《中华人民共和国计算机信息系统安全保护条例》) issued by the State Council, which forbids the use of computer information system to harm the legitimate interests of

the citizens or endanger the safety of computer information system;

(f) Article 6 of the Administrative Measures for the Security Protection of Computer Information Networks Linked to the Internet (《计算机信息网络国际联网安全保护管理办法》) issued by the Ministry of Public Security upon approval of the State Council, which forbids activities endangering computer information network security, including accessing the computer information network and deleting, altering or adding any function of computer information network without permission;

(g) Articles 4 and 5 of the Decision of the Standing Committee of the National People's Congress on Preserving Computer Network Security (《全国人民代表大会常务委员会关于维护互联网安全的决定》), which make it clear that the intercepting, tampering with or deleting other persons' data may be investigated for criminal charges and subject to criminal liability;

(h) Articles 1, 2 and 3 of the Decision of the Standing Committee of the National People's Congress on Strengthening Information Protection on Networks (《全国人民代表大会常务委员会关于加强网络信息保护的决定》), which set out the protections to electronic information that involves personal identity and privacy, in particular against illegal gathering, sales, leak and altering of personal electronic information.

**Failure to carry out Business**

40. The Respondents jointly and severally represented and warranted in the SPA to the Claimant that:

40.1 Each Group Company has all requisite power and authority to own its properties and assets and to carry out its business. Each Group Company is qualified to do business and is in good standing (*see* Section 4.01);

40.2 Each of the PRC Companies possesses all requisite approvals, permits and licenses for the conduct of business and for the ownership and operation of its assets and property (*see* Section 4.03(b)); and

40.3 Since the Financial Statements Date, with respect to each Group Company, there has not been: (i) any change in the assets, liabilities, financial condition or operating results that have not been, in the aggregate, materially adverse;  (ii) any failure to conduct business in the ordinary course, consistent with the Group Company's past practices (*see* Sections 4.16(a) and (m)).

41. Under Section 10.14 of the SHA, each shareholder of the Company agrees that it shall use its best effort to enhance and increase the value and principal business of the Company.

42. Further, the Respondents jointly and severally represented and warranted in the SPA that each of the Key Employees including the Founder is currently devoting his or her full working time to the conduct of the Business of the Group Companies (*see* Section 4.23). The Founder specifically acknowledged that the Claimant agreed to invest in the Company on the basis of the continued and exclusive services of and devotion and commitment by the Founder to the Group Companies, and agreed that the Claimant shall have reasonable assurance of such basis of investment (*see* Section 6.12). In addition, the Respondents covenanted to the Claimant that the Founder shall devote all his professional time to attend the business of the Group Companies until the first anniversary of a Qualified Initial Public Offering (*see* Section 6.13). Sections 9.3 and 9.4 of the SHA have the mirrored requirements regarding the Founder's full time commitment to the Business of the Group Companies and the Founders' acknowledgement and agreement to his continued and exclusive services. Thus, it is pivotal to the Claimant's investment that the Founder and key employees keep devoting full time to the business of the Group Companies.

43. However, as a result of the Criminal Investigations, the Founder and other key employees of the Group Companies have not been attending to work since 13 November 2019. Subsequently, the business partners of the VIE Entities have all suspended business dealings with them. The business of the Group Companies has come to a halt. As such, the Respondents have breached the above representations, warranties and covenants in respect of the business of the Group Companies and full commitment of the Key Employees (the "**Business and Full Commitment Representations**").

**Failure to protect the Personal Information**

44. The SPA stresses the importance of complying with all applicable Laws in the collection, storage, transfer and/or use of any Personal Information. The Respondents jointly and severally represented, warranted and covenanted to the Claimant that (the "**Data Privacy Representations**"):

44.1 In connection with its collection, storage, transfer (including without limitation, any transfer across national borders) and/or use of any Personal Information from any individuals, each Group Company is and has been, in compliance with all applicable Laws in all relevant jurisdictions; and each Group Company has obtained all Permits, Consents and authorization for obtaining, using and processing the Personal Information and other data

obtained and received by it (*see* Section 4.27 of the SPA); and

44.2   As soon as practicable but in no event later than 120 days after the Closing, the Group Companies shall take commercially reasonable physical, technical, organisational and administrative security measures and policies, which are set out in great detail in Section 6.21, to protect all Personal Information collected by it or on its behalf from and against unauthorized access, use and/or disclosure(*see* Section 6.21 of the SPA).

45.   As shown by the Criminal Investigations, the Respondents have long been in breach of their obligations to take measures and policies to protect the Personal Information of end-users against unauthorised access, use or disclosure.

**Failure to disclose any information related to the Illegitimate Businesses**

46.   Section 4.24 of the SPA imposes clear and unequivocal obligations on the Respondents to provide the Claimant with all the information that they reasonably believe is necessary or relevant to enable the Claimant to make an informed investment decision. In particular, the Respondents jointly and severally represented and warranted to the Claimant that all the information provided are true, correct, complete and not misleading (*see* also Section 4.24) and that there has not been any other event or condition of any character which could reasonably be expected to have a Material Adverse Effect since the Financial Statements Date (*see* Section 4.16(o) of the SPA).

47.   Section 6.14 of the SPA further requires the Respondents to give immediate written notice to the Claimant if any of the Respondents, at any time before the Closing, comes to know of any material fact or event which might affect the willingness of a reasonable investor in making a prudent decision to purchase the Relevant Shares. The Respondents have continuing obligations after the Closing under Section 6.30(b) of the SPA to give the Claimant notice of their breach of any representation or warranty.

48.   Despite these clear provisions (collectively, the "**Disclosure Representations**"), the Respondents have not disclosed any information related to the Illegitimate Businesses to the Claimant prior to, at or after the execution of the SPA and the Closing. It was only recently that Claimant became aware of the complaints of a third party against the VIE Entities for their conducting the Illegitimate Businesses and it was clear that such businesses were in existence prior to the execution of the SPA. If the true nature of the Illegitimate Businesses or third party's complaints had been disclosed to the Claimant, the Claimant would not have entered into or executed the SPA.

49.   As the VIE Entities have been operated and managed by the Founder and his management team, the Claimant has still not been able to obtain sufficient

information about how the Illegitimate Businesses have been conducted and the possible revenue generated by the Illegitimate Businesses.

**Engaged in the businesses not permitted by the Claimant**

50. The Respondents jointly and severally represented and warranted that the WFOE and the PRC Companies are engaged solely in the Business and have no other activities while the Company, the BVI Company and the HK Company were formed solely to acquire and hold, directly and indirectly, the equity interests in the WFOE (*see* Section 4.21). Similarly, Section 4.12 provides that the conduct of its business by any Group Company shall not violate the term of its Constitutional Documents.

51. In Section 6.01 of the SPA, the Respondents jointly and severally covenanted to the Claimant that the Company shall use the proceeds from the issuance and sale of the Relevant Shares for business expansion, capital expenditure and working capital of the Company and its subsidiaries by way of increasing the WFOE's registered capital. Under Section 6.03 of the SPA, the business of the Company and that of the BVI Company shall be restricted to the holding of relevant shares or equity interest.

52. Section 6.04 of the SPA specifically requires the prior written approval of the Investors, including the Claimant, for the PRC Companies to engage in any new business. The Respondents further covenanted to the Claimant under Section 6.04 that from the Closing and until the new business plan is duly amended, the business of the PRC Companies shall be limited to the Business.

53. The SHA contains various protective provisions in favour of the Claimant as Investor to prevent the Respondents from taking certain actions that may affect the rights of the Investors. Under Sections 8.1 (f), (n) and (o), the Group Companies shall obtain, and the Founder shall ensure that the Group Companies obtain the affirmative votes or prior written consent of the Majority Preferred Shareholders for any equity investment in any third party or the creation of any new subsidiaries. Sections 8.2(a), (c), (f) and (p) of the SHA require the approval of the Investor Directors for any material change to the business scope or entering into new line of business, appointment or removal of any of the Company's chief-level executives and the provision of loans or incurrence of indebtedness by any Group Company to a third party. The same approval requirement can be found in Articles 42(f), (n) and (o) and 42A(a), (c), (f) and (p) of the Restated Articles. Further, the Claimant, by virtue of Sections 1.1(a) and (b) of the SHA, has, among others, the Information Rights to request the financial documents of the Group Companies and the Inspection Rights to inspect the facilities, records and books of the Group Companies.

54.  Despite these provisions (collectively, the "**Exclusive Business Representations**"), the Illegitimate Businesses actually engaged by the VIE Entities go well beyond the Business. It is in serious doubt that the proceeds from the Claimant's subscription of the Relevant Shares have been used for legitimate business expansion. To make things worse, as shown by the Notice of 17 March 2020, the Group Companies attempted and are attempting to use part of the proceeds for setting up new overseas business without the approval of the Claimant. Indeed, Changsha Kobolink was established on the Respondents' own initiatives and RMB 9,000,000 has been transferred from the WFOE to Changsha Kobolink for the improper purpose. The Respondents' conduct has clearly constituted violations of the above representations, warranties and covenants or alternatively an anticipatory breach that should be prohibited.

**Other ancillary breaches**

55.  In light of the above breaches, the Respondents at the same time have violated the following obligations, by way of example:

55.1  to carry out and perform their obligations under the Transaction Documents (*see* Section 4.04 of the SPA);

55.2  to maintain good and marketable title to its properties and assets (*see* Section 4.07 of the SPA); and

55.3  to comply with the terms of the Group Company Contracts entered into with all the other parties (*see* Section 4.09 of the SPA).

56.  As the Criminal Investigations proceed, additional breaches of the SPA and the SHA may come to the surface. It is also clear that the Respondents have embarked on various actions in furtherance of their breaches. The Claimant expressly reserves all its right to supplement or amend the breaches set out above as the circumstances require.

**Fraudulent and/or negligent misrepresentations**

57.  The breaches of the various representations, warranties and covenants pleaded above further mean that the Compliance Representations, the Business and Full Commitment Representations, the Data Privacy Representations, the Disclosure Representations and the Exclusive Business Representations were all false (the "**Misrepresentations**").

58.  These Misrepresentations must have been made fraudulently or alternatively negligently in that the Respondents must have at all material times been aware of the businesses that it undertook and the existence of the Illegitimate Businesses and the complaints and investigations related thereto.

59.  The Claimant relied upon these representations and would not have entered into

the SPA if they had known that these representations were false.

### D.    THE RESPONDENTS' JOINT AND SEVERAL LIABILITIES

**Rescission of the SPA**

60.    By reason of the various Misrepresentations and breaches of warranties identified above, the Claimant is entitled to and does rescind the SPA, by way of the Notice of 13 April 2020, and requests for repayment of the entire Purchase Price of USD 13,880,000 from each of the Respondents as well as further damages to be assessed.

61.    Alternatively, if the Claimant is not entitled to rescission or unable to rescind, it requests for indemnity and damages as follows.

**Request for Indemnification**

62.    Pursuant to Sections 9.01 (a) and (b) of the SPA, each of the Respondents shall jointly and severally indemnify the Claimant against the loss and damage that it suffered as a result of the various breaches and Misrepresentations identified in paragraphs 36-55 above.

63.    The Company has lost its capacity to conduct business through the Group Companies and become virtually worthless, causing a complete loss of the entire investment of the Claimant in the amount of USD 13,880,000. As stated in its Notice of 13 April 2020, the Claimant requested indemnification by the Respondents on a joint and several basis for its Indemnifiable Damage in the amount of USD 13,880,000.

64.    Further or alternatively, the Claimant has suffered damages as a result of the Misrepresentations in the amount of USD 13,880,000.

65.    Up to now, the Respondents have not paid the requested payment.

### V.    REQUEST FOR RELIEF

66.    The Claimant seeks the following relief from the arbitral tribunal:

66.1    on rescission:

(a) a declaration that the Claimant is entitled to rescission of the SPA;

(b) an order that the Respondents jointly and severally repay the Claimant the entire Purchase Price of USD 13,880,000;

(c) further damages to be assessed and provided in due course, or in an amount that the arbitral tribunal deems appropriate;

66.2    further or alternatively, an order that the Respondents jointly and severally

pay to the Claimant damages in the sum USD 13,880,000;

66.3    further or alternatively, an order that the Respondents jointly and severally pay to the Claimant the Indemnifiable Damage in the amount of USD 13,880,000; and

66.4    an order that the Respondents jointly and severally pay to the Claimant the costs incurred by the Claimant, including the costs of this arbitration and its legal and other reasonable costs; and

66.5    an order that the Respondents jointly and severally pay to the Claimant pre-award and post-award interest on all sums due; and

66.6    such further or other relief as the arbitral tribunal deems appropriate.

## VI.    **PROCEDURAL MATTERS**

### A.    APPOINTMENT OF ARBITRATOR

67.    Pursuant to Section 9.17(b) of the SPA and Section 10.13(b) of the SHA, there shall be three arbitrators and the Claimant and the Respondents shall each select one arbitrator, with the third arbitrator to be selected by the chairman of the HKIAC pursuant to relevant qualifications. The Claimant therefore proposes that there be three arbitrators and hereby appoints Mr. Adrian Lai as its arbitrator in accordance with Section 9.17(b) of the SPA and Section 10.13(b) of the SHA, whose contact details are as follows:

> Des Voeux Chambers
> 38/F Gloucester Tower
> The Landmark
> Central, Hong Kong
> Tel: +852 2526 3071
> Fax: +852 2810 5287
> Email: adrian.lai@dvc.hk

### B.    SEAT OF ARBITRATION AND LANGUAGE OF ARBITRATION

68.    Pursuant to Section 9.17(c) of the SPA and Section 10.13(c) of the SHA, the Claimant submits that the seat of arbitration shall be in Hong Kong and the language of the arbitration shall be English.

## VII.  SUBMISSION OF THE NOTICE OF ARBITRATION

69.  The Claimant confirms that the Notice of Arbitration and the exhibits and annexes attached thereto are being served on each of the Respondents by courier and email at the relevant addresses set out in paragraphs 6-15 above including both the address stipulated under the SPA and the SHA as well as the registered or personal addresses.

70.  A payment of the registration fee of HKD 8,000 as requested by the HKIAC is also being made to the HKIAC.


## VIII.  RESERVATION OF RIGHTS

71.  The Claimant reserves the right to serve a full Statement of Claim in due course in accordance with the HKIAC Rules. The Claimant further reserves the right to amend and supplement its allegations, claims and relief sought in its Statement of Claim and/or otherwise in this arbitration.


**Dated 28 April 2020**


**Zhong Lun Law Firm**

*Zhong Lun Law Firm*


**Clark Wang**

**Sir Oswald Cheung's Chambers**


For and on behalf of the Claimant

Annex 1

8th Respondent
Founder
Mr. Zhu Yipeng
朱翼鹏
100%
9th Respondent
Founder Holdco
The Roc Fortune Ltd.
ESOP
(Reserved)
Microfountain Holdings
Limited
Warrant Holder
Songchen International
Limited
Investor
CCV Fund I LP
TOP STRIDE LIMITED
Investor
Alpha Startup Fund LP
Claimant
Investor
CW Baice Limited
Shareholders
53.77%
10.75%
4.14%
4.14%
13.61%
1.78%
3.00%
8.82%
Group Companies
1st Respondent
Company
The Wisdomobile Group Limited (formerly known as The Ocean Swell Group Limited)
100%
2nd Respondent
BVI Company
The Wisdomobile Limited (formerly known as The Ocean Swell Limited)
100%
3rd Respondent
HK Company
Wisdomobile HK Limited (formerly known as Hong Kong Baice Limited)
香港佰策有限公司
Offshore
Onshore
100%
7th Respondent
WFOE
Beijing Shangxing Zhijian Network Technology Co., Ltd.
北京上行至简网络科技有限公司
VIE
8th Respondent
Founder
Mr. Zhu Yipeng
朱翼鹏
Mr. Nie
Dongchen
聂冬辰
Shanghai Songyi Internet
Technology Co., Ltd.
上海嵩轶网络科技有限
公司
Shanghai Youle Internet
Technology Co., Ltd.
上海佑仂网络科技有限
公司
Zhuhai Microfountain
Technology Co., Ltd.
珠海市小源科技有限公司
Shenzhen Top Stride
Investment Management
Co., Ltd.
深圳市惠友投资管理有限
公司
Ningbo Meishan Bonded Port Zone
Alpha Tiancheng Equity Investment
Partnership (Limited Partnership)
宁波梅山保税港区阿尔法天成股
权投资合伙企业（有限合伙）
Nantong Chengwei Changqing
Equity Investment Partnership
(Limited Partnership)
南通成为常青股权投资合伙
企业（有限合伙）
64.52%
13. 60%
2.07%
2.07%
4.14%
1.78%
3.00%
8.82%
4th Respondent
Domestic Company
Beijing Baice Technology Co., Ltd. 北京佰策科技有限公司
100%
100%
5th Respondent
Shanghai Zhaolin Technology Co., Ltd.
上海兆林科技有限公司
6th Respondent
Zhuhai Baice Technology Co., Ltd.
珠海佰策科技有限公司

