United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CW BAICE LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>THE WISDOMOBILE GROUP LIMITED, et al.,<br><br>    Defendants. | Case No. 20-CV-03526-LHK<br><br>**ORDER DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 42 |

On June 5, 2020, the Court granted Plaintiff CW Baice Limited's ex parte motion for a temporary restraining order ("TRO") to enjoin Defendants The Wisdomobile Group Limited ("Wisdomobile Group"), The Wisdomobile Limited ("Wisdomobile Limited"), and Wisdomobile HK Limited ("Wisdomobile HK") (collectively, "Defendants") from "disposing of or diminishing the value of any assets" located in two accounts at Silicon Valley Bank. ECF No. 17. On July 1, 2020, after Defendants failed to show cause why a preliminary injunction should not issue, the Court issued a preliminary injunction (the "Preliminary Injunction"). ECF No. 22. Before the Court is Defendants' motion to dissolve the Preliminary Injunction. ECF No. 42. Having considered the arguments and declarations provided by Defendants, the Court DENIES Defendants' motion to dissolve the Preliminary Injunction.

## I. BACKGROUND

### A. Factual Background

Defendant Wisdomobile Group is a holding company that operates through numerous other companies, including Defendants Wisdomobile Limited and Wisdomobile HK. Verified Complaint ¶ 16, ECF No. 1 ("Compl."). Defendants' business model consists of "distribution of mobile applications, mobile games and contents [*sic*], an overseas application store, big data processing, mobile applications, and mobile advertising." *Id.* On June 4, 2019, Plaintiff invested $13,880,000 for 5,330,261 Series A+ Preferred Shares, or then 8.82% of the issued share capital, of Defendant Wisdomobile Group. *Id.*

In November and December 2019, Plaintiff learned that the founder and numerous employees of Defendant Wisdomobile Group were detained and arrested for suspected criminal activity involving computer fraud. *Id.* ¶ 18. As a result of the investigation and fallout, Defendants were forced to cease business activities. *Id.*

On March 17, 2020, Plaintiff sent a notice to Defendants and others requesting that Defendants "stop all alleged illegal conducts [*sic*] and refrain from conducting new business without first obtaining the approval of the board of directors of Wisdomobile Group." *Id.* ¶ 20. Plaintiff received no response to the notice. *Id.* ¶ 21. Accordingly, on April 13, 2020, Plaintiff sent Defendants a Notice of Rescission and Request for Indemnification. *Id.* Plaintiff sought to rescind the share purchase agreement or, in the alternative, request indemnity for the $13,880,000 investment. *Id.*

On April 22, 2020, Plaintiff requested an injunction prohibiting the disposal of assets by Defendants and six other parties worldwide from the Hong Kong Special Administrative Region Court of First Instance ("Hong Kong Court"). *Id.* ¶ 12. On April 23, 2020, the Hong Kong Court issued an injunction against all nine parties, including Defendants (the "Hong Kong Injunction"). *Id.* The Hong Kong Injunction required Defendants not to "in any way dispose of or deal with or diminish the value of any of [their] assets" across the globe, unless the Defendants took certain steps to secure $13,880,000, the amount of Plaintiff's investment. Compl. Ex. A ("Hong Kong

Injunction") at ECF 14. The Hong Kong Injunction specifically stated that it applied to assets contained in two bank accounts held by Defendants Wisdomobile Group and Wisdomobile HK at Silicon Valley Bank, which is in the Northern District of California. *Id.* According to Plaintiff, these bank accounts contain a total of approximately $4 million. ECF No. 15-2 ("Ye Decl.") ¶ 23.

On April 23, 2020, the same day the Hong Kong Injunction was issued, Plaintiff sent a copy of the Injunction to Silicon Valley Bank and requested that Silicon Valley Bank freeze the two accounts specified in the Hong Kong Injunction. Compl. ¶ 13. However, on April 28, 2020, Silicon Valley Bank responded that the bank did "not understand why we being a company registered in the United States should be bound by the [Hong Kong Injunction] which is issued by the Hong Kong court. Please enlighten us why we should follow the [Hong Kong Injunction] as indicated in your letter." Ye Decl. Ex. I. According to Plaintiff, Silicon Valley Bank had thus far "not agreed to comply with the Injunction because the Injunction was issued by a court not located in the United States." *Id.* ¶ 22. Silicon Valley Bank is not a party to the instant case.

On April 28, 2020, Plaintiff then filed a Notice of Arbitration in the Hong Kong International Arbitration Centre. Compl. ¶ 21; Compl. Ex. C ("Notice of Arbitration"). Plaintiff sought arbitration pursuant to provisions in the share purchase agreement and shareholders agreement, both of which specified that any disputes are subject to arbitration in the Hong Kong International Arbitration Centre. *Id.* ¶ 15. Arbitration proceedings are ongoing.

The Hong Kong Injunction was initially set to expire on April 29, 2020. However, on May 4, 2020, following a hearing attended by Plaintiff and Defendants, the Hong Kong Court ordered that the Hong Kong Injunction remain in force until an arbitral tribunal was constituted to rule on the dispute. *Id.* ¶ 14; Ye Decl. ¶ 18.

**B. Procedural History**

On May 26, 2020, Plaintiff filed a verified complaint for injunctive relief pending arbitration. ECF No. 1. On June 1, 2020, Plaintiff filed an ex parte motion for a temporary restraining order in this Court to enjoin Defendants from "[d]isposing of or diminishing the value of any assets located in the United States." *See* ECF No. 15. Plaintiff sent physical and electronic

copies of the filings to Defendants' Hong Kong counsel on June 1, 2020. ECF No. 16.

The Court granted Plaintiff's request for a TRO on June 5, 2020, and the Court ordered Defendants to show cause why a preliminary injunction should not issue. ECF No. 17. In order "to allow Defendants, who are foreign entities, sufficient time to retain United States counsel and to determine whether in fact they wish to oppose this Court's issuance of a preliminary injunction," the Court adopted an extended briefing schedule that called for Defendants to file a brief by June 26, 2020. ECF No. 18 at 2. The Court nonetheless acknowledged that Defendants were entitled pursuant to Federal Rule of Civil Procedure 65(b) to an expedited briefing schedule. *Id.* Thus, the Court ordered Plaintiff to serve on Defendants the Court's orders in the instant matter by June 6, 2020, and the Court ordered Defendants to notify the Court by June 10, 2020, if Defendants would like an expedited briefing schedule. *Id.* Plaintiff sent physical and electronic copies of the Court's orders to Defendants' counsel on June 6, 2020. ECF No. 16.

Defendants failed to respond by either June 10, 2020, or June 26, 2020. Instead, on June 30, 2020, four days after Defendants' deadline to file a brief showing cause why a preliminary injunction should not issue, the parties filed a proposed stipulation to continue the temporary restraining order and the briefing schedule on the preliminary injunction. ECF No. 21. Specifically, Defendants requested to extend their June 26, 2020, filing deadline a total of thirty-four days to July 30, 2020, which would require the Court to vacate the previously scheduled July 23, 2020, preliminary injunction hearing. *Id.* Plaintiffs would then file their opposition on August 21, 2020. *Id.* The stipulation requested that the Court set a new hearing date on August 27, 2020, at 1:30 p.m. *Id.*

The Court denied the stipulation for untimeliness. ECF No. 22. Instead, the Court issued the following Preliminary Injunction:

> Pending the parties' ongoing arbitration before the Hong Kong International Arbitration Centre, Defendants and their directors, officers, agents, servants, employees, representatives, and those acting in concert with Defendants are hereby enjoined from disposing of or diminishing the value of any assets located within (a) the Wisdomobile Group bank account number 3302534130 at Silicon Valley Bank, 3003 Tasman Drive, Santa Clara, CA 95054, and (b) the Wisdomobile HK bank

account number 3302534164 at Silicon Valley Bank, 3003 Tasman Drive, Santa Clara, CA 95054.

ECF No. 22.

The Court also granted Defendants leave to file a motion for reconsideration of the Preliminary Injunction *Id.* On July 30, 2020, Defendants filed a motion for reconsideration. ECF No. 26. On August 25, 2021, the Court denied the motion for reconsideration. ECF No. 32.

On January 25, 2021, Defendants filed the instant motion to dissolve the Preliminary Injunction. ECF No. 42 ("Mot."). On February 8, 2021, Plaintiff filed an opposition. ECF No. 47 ("Opp'n"). On February 16, 2021, Defendants filed a reply. ECF No. 50 ("Reply").

## II.   LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

"[S]ound judicial discretion may call for modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtained at the time of its issuance have changed, or new ones have arisen." *Mariscal–Sandoval v. Ashcroft,* 370 F.3d 851, 859 (9th Cir. 2004) (quoting *Sys. Fed'n No. 9 Railway Employees' Dept. v. Wright,* 364 U.S. 642, 647–48 (1961)). "Because injunctive relief is drafted in light of what the court believes will be the future course of events . . . a court must never ignore significant changes in the . . . circumstances underlying an injunction lest the decree be turned into an instrument of wrong." *Salazar v. Buono,* 559 U.S. 700, 714–15 (2010) (internal quotation marks omitted). The party seeking dissolution of a preliminary injunction "bears the burden of establishing that a significant change

in facts or law warrants revision of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (per curiam) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)).

## III. DISCUSSION

Defendants move to dissolve the Court's Preliminary Injunction, which enjoins Defendants from dissipating assets held at Silicon Valley Bank in Santa Clara, California "[p]ending the parties' ongoing arbitration before the Hong Kong International Arbitration Centre." ECF No. 22. To support its motion, Defendants rely on a December 28, 2020 decision by the Hong Kong Court. ECF No. 42-1, Ex. A ("Hong Kong Court's decision"). The Hong Kong Court's decision discharges the Hong Kong Court's April 23, 2020 ex parte injunction against Defendants ("Hong Kong Injunction"). *Id.* at 38. Among other things, the Hong Kong Injunction had also enjoined Defendants from dissipating the assets held at Silicon Valley Bank.

In Defendants' view, the Hong Kong Court's decision constitutes a "fundamental change in facts which warrants review and dissolution of the Preliminary Injunction." Mot. at 6. Below, the Court first summarizes the standard for dissolving a preliminary injunction. The Court then analyzes whether Defendants have met this standard under the four-part test for preliminary injunctions. Ultimately, the Court denies Defendants' motion.

### A. Defendants bears the burden of showing that the Preliminary Injunction should be dissolved.

"A party seeking modification of an injunction bears the burden of establishing that a significant change in facts or law warrants revision of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (per curiam) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)). Here, the Court assumes for the sake of argument that the Hong Kong Court's decision has "established a 'significant change in facts or law.'" *Id.* The Court thus analyzes "whether this change 'warrants dissolution of the injunction." *Id.*

To determine whether a change warrants dissolving an injunction, the Court analyzes "the same criteria that govern the issuance of a preliminary injunction." *Id.* Defendants therefore must establish that, due to the change in circumstances: (1) Plaintiff is no longer "likely to succeed on

6
Case No. 20-CV-03526-LHK
ORDER DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION

the merits," (2) Plaintiff is no longer "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities [no longer] tips in [Plaintiff's] favor"; and that (4) the injunction is no longer "in the public interest." *Id.* n.14 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### B. Defendants fail to show that the Preliminary Injunction should be dissolved.

The Court analyzes in turn the four criteria for dissolving a preliminary injunction. None supports dissolving the preliminary injunction.

#### 1. Defendants fail to show that Plaintiffs are no longer likely to succeed on the merits.

First, Plaintiff still shows a likelihood of success on the merits as to the underlying dispute. The Court's prior findings have not been disturbed by the Hong Kong Court's decision. Those findings are as follows. Sheng Ping, Defendants' CFO, has "admitted . . . that the allegations of illegal conduct" by Defendants are true. Ye Decl. ¶ 12. Moreover, Zhu Yipeng, the Founder and CEO of Defendants, also admitted to "the alleged illegal activities, including that the businesses had utilized silent activation on the end users' mobile phones without their authorization." *Id.* The Hong Kong arbitration at issue primarily concerns Defendants' breach of the warranties Defendants made to Plaintiff about the absence of illegal conduct in connection with their business. *See generally* Compl., Ex C., ECF No. 2 (Notice of Arbitration). To the extent that Defendants' CFO and CEO have effectively admitted that Defendants violated these warranties, and based on the record before the Court, Plaintiff is likely to succeed on the merits of the arbitration.

Indeed, the Hong Kong Court's decision suggests that Plaintiffs' case is likely to succeed on the merits. Several of the Hong Kong Court's holdings support this conclusion. For example, the Hong Kong Court held that "[it] can only conclude that there is, indeed, a good arguable case, that the Defendants were in breach of the contract, which entitled the Plaintiffs to serve notice of rescission on 13 April 2020." ECF No. 42-1 at 16. The Hong Kong Court further held that "[t]here is at least a good arguable case that Defendants were in breach of the relevant provisions of the

7
Case No. 20-CV-03526-LHK
ORDER DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION

[Shares Purchase Agreement], the [Shareholders Agreement] and the Articles [of Association of the Company], in incurring expenses which the Plaintiff had not approved of." ECF No. 42-1 at 24. In fact, the Hong Kong Court explained, "[i]t cannot be disputed that there were unauthorized transfers . . . and unauthorized payment of expenses which cannot be shown to be normal dispositions made in the usual or ordinary course of Defendants' business." *Id.* at 36. Thus, the Hong Kong Court's decision only reinforces the likelihood of Plaintiff's success on the merits.

### 2. Defendants fail to show that Plaintiffs are no longer likely to suffer irreparable harm.

Second, Plaintiff still shows "that irreparable harm is likely." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Typically, monetary harm alone does not constitute irreparable harm . . . . Therefore, a party seeking an asset freeze has the additional burden of showing 'a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.'" *Fid. Nat'l Title Ins. Co. v. Castle*, No. 11-CV-00896-SI, 2011 WL 5882878, at *5–6 (N.D. Cal. Nov. 23, 2011) (citations omitted); *accord Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers) ("If expenditures [of money] cannot be recouped, the resulting loss may be irreparable.").

Here, the dissipation of assets is likely in the absence of the Preliminary Injunction. As the Court has held, "[t]he evidence demonstrates that the Defendants are already depleting their assets, have admitted that they plan to do so to make them hard to reach by the police and even to use them improperly to seek the assistance of senior government officials with respect to the detention of their employees and the criminal investigations." ECF No. 17 at 6. The Court has further held that the roughly $4 million contained within the two bank accounts amounts to the only money that Defendants have not yet dissipated. *Id.* at 7. Dissipation of this final amount will result in Plaintiff's inability to recover pursuant to arbitration and result in irreparable harm. *Id.*

Both the Hong Kong Court's decision and Defendants' filings in this Court confirm the Court's prior holdings. The Hong Kong Court decision found "clear evidence" that Defendants had engaged in (1) dishonesty; (2) unauthorized transfers; (3) unauthorized payment of expenses

8

Case No. 20-CV-03526-LHK
ORDER DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION

without the required approval by Plaintiff; (4) breaches of provisions of the Share Purchase Agreement, Shareholders Agreement and Restated Articles. ECF No. 42-1 at ¶¶ 25–26, 32–33, 47–48, 64. The Hong Kong Court thus concluded that "[t]he expenditure and transfers of money without the directors' prior knowledge and approval *do evidence* the existence of a risk that unless they are restrained by an appropriate order of the [Hong Kong] Court, the Defendants may be *likely and are prepared to* take steps to dispose of the[ir] assets." ECF No. 42-1 ¶ 49 (emphasis added). Yet the Hong Kong Court has dissolved the Hong Kong Injunction because Defendants' unauthorized transfers were "disclosed." *Id.* In this Court's view, Defendants' disclosure of concededly unauthorized transfers fails to support dissolving the Preliminary Injunction under U.S. law. *See, e.g.*, *Scott*, 561 U.S. at 1304 ("If expenditures cannot be recouped, the resulting loss may be irreparable.").

As for Defendants' filings, Defendants have represented to this Court that they intend to dissipate the assets frozen at the Silicon Valley Bank if the Preliminary Injunction is dissolved. Defendants made this representation in a motion to shorten time, ECF No. 43. There, Defendants stated their desire to "access[] their funds held in their bank accounts at Silicon Valley Bank." *Id.* at 2.

Given these facts, and Defendants' apparent repeated disregard for the law, the Court finds a likelihood of dissipation of assets absent an injunction. *See, e.g.*, *Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2011 WL 6113198, at *6 (N.D. Cal. Dec. 7, 2011) (finding likelihood of irreparable harm in light of defendant's history of violation of court orders); *Castle*, 2011 WL 5882878, at *6 ("[W]hen allegations of past fraud are coupled with supplemental evidence that demonstrates a likelihood of dissipation, courts may freeze assets.").

### 3. Defendants fail to show that the balance of the equities now favors Defendants.

Third, the balance of equities favors Plaintiff. To balance the equities, courts must weigh "the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations omitted). Applying this rule, Courts in the Ninth Circuit have found that the balance of equities weighs in favor of plaintiff's

request for an injunction when "the danger that [plaintiff] would not be able to recover on its claims against defendants is greater than the harm to defendants from freezing their assets before trial." *Arch Ins. Co. v. Sierra Equip. Rental, Inc.*, No. CIV S-12-0617-KJM, 2012 WL 5897327 (E.D. Cal. Nov. 13, 2012); *accord Wimbledon Fund, SPC (Class TT) v. Graybox, L.L.C.*, No. 15-CV-06633-CAS 2015 WL 5822580, at *7 (C.D. Cal. Sept. 29, 2015) (holding same), *aff'd sub nom. Wimbledon Fund, SPC Class TT v. Graybox, LLC*, 648 F. App'x 701, 703 (9th Cir. 2016) (affirming issuance of preliminary injunction).

Here, the Hong Kong Court's decision does not change the fact that the balance of the equities favors Plaintiff. Plaintiff is still likely to suffer irreparable damage absent the Preliminary Injunction. In fact, now that the Hong Kong Injunction is no longer in place, Defendants have expressly acknowledged their intent to dissipate the assets currently frozen at the Silicon Valley Bank if the Preliminary Injunction is dissolved. *See* Section III-B-2, *supra* (detailing likelihood of irreparable harm). Plaintiff will suffer harm from Defendants' dissipation of these funds, which highlights the need for a preliminary injunction until the arbitration has concluded.

Moreover, the dissolution of the Hong Kong Injunction fails to show that the equities tip in Defendants' favor. The Preliminary Injunction's effect is that Defendants "are simply being held to the terms of [agreements] that they signed voluntarily." *Abdou v. Davita, Inc.*, 734 F. App'x 506, 507 (9th Cir. 2018) (affirming issuance of preliminary injunction). In such cases, the enjoined defendants "do not face comparable harm" relative to the plaintiff seeking an injunction. *Id.* Specifically here, Defendants signed a share purchase agreement and shareholders agreement, which both specify that any disputes are subject to arbitration in the Hong Kong International Arbitration Centre. Compl. ¶ 15. This contractual arbitration process has not concluded, and no arbitral award has been rendered. An arbitration hearing will be held between December 7 and December 17, 2021, with an arbitral award sometime thereafter. ECF No. 55 (May 19, 2021 Joint Case Management Statement). All told, the balance of equities still tips in Plaintiff's favor.

### 4. Defendants fail to show that the Preliminary Injunction no longer furthers the public interest.

Fourth, and finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Here, Defendants fail to show that the Preliminary Injunction no longer furthers the public interest. To the contrary, the Preliminary Injunction still furthers the public interest in two ways.

To start, the Preliminary Injunction furthers the Federal Arbitration Act's "strong United States policy favoring the enforcement of arbitral awards." *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 291 (2d Cir. 2011). The Preliminary Injunction furthers this policy by preserving the viability of Plaintiff's foreign arbitral award. Without the Preliminary Injunction, any arbitral award would likely be unenforceable because Defendants will likely dissipate their assets. *See* Section III-B-2, *supra* (detailing likelihood of irreparable harm).

Moreover, the Preliminary Injunction respects international comity. Comity entails "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Here, recent executive acts by the Chinese government suggest that, to the extent comity with the People's Republic of China is a consideration, Defendants should not be allowed to dissipate assets. Specifically, 16 of Defendants' employees—including Defendants' Founder and Director, Zhu Yipeng—have pleaded guilty in Chinese court to crimes related to Defendants' business. *See, e.g.*, ECF No. 55 at 3 (May 19, 2021 Joint Case Management Statement) (conceding that executives and "senior management personnel" have pleaded guilty); ECF No. 42-1 ¶¶ 6–7 (Hong Kong Court decision noting "criminal activities in which the Defendants had engaged in the conduct of the business"). In short, the Preliminary Injunction constrains individuals who have already been adjudicated as wrongdoers by another sovereign.

In response, Defendant argues that international comity requires this Court to "giv[e] credence to the Hong Kong Court's removal of the [Hong Kong Injunction]." ECF No. 50 at 4. The Court disagrees. The Hong Kong Court's only reason for dissolving its injunction is that

11
Case No. 20-CV-03526-LHK
ORDER DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION

1  Defendants "partial[ly] disclos[ed]" their concededly unauthorized asset transfers. ECF No. 42-1
2  ¶¶ 50–52, 64–65. Yet as detailed above, the rest of the Hong Kong Court's decision supports
3  maintaining the Preliminary Injunction under the four-part test set forth in *Winter v. Nat. Res. Def.*
4  *Council, Inc.*, 555 U.S. 7, 20 (2008). *See* Section III-B-1–4, *supra* (analyzing Hong Kong Court
5  decision). Thus, by maintaining the Preliminary Injunction, the Court respects the Hong Kong
6  Court's many findings as to Defendants' dishonesty, unauthorized transfers of assets, and
7  violations of law. In sum, the Preliminary Injunction still furthers the public interest.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dissolve the Preliminary Injunction.

**IT IS SO ORDERED.**

Dated: July 20, 2021

_____
LUCY H. KOH
United States District Judge

Case No. 20-CV-03526-LHK
ORDER DENYING MOTION TO DISSOLVE PRELIMINARY INJUNCTION